Good morning, Your Honor. It's Tony Faramani on behalf of Mr. Hernandez. Your Honor, Mr. Hernandez's conviction was finalized for purposes of AEDPA in August of 2005. In October of 2007, about two years later, he files his federal petition. The state contends that the federal petition was untimely, and the magistrate judge and the district court so found, essentially because they're saying he's not entitled to statutory tolling for two specified periods of time. Your Honor, I think the first thing we need to consider here is that from August of 2005 to October of 2007 is not that much of a time. We're talking about only two years. Can I just back up one minute? There's also this issue about the mailbox rule. Does it make a difference? It does make a difference, Your Honor, because the district court found that Mr. Hernandez's petition was untimely by three days. Actually, more accurately, it's two days when you do the time, but they found it was three days. So when you apply the mailbox rule, particularly to the filing of the federal habeas petition and the second habeas petition or any of the other filings that were done in the state court, then you get about 40 days. So when you add that to the time, then you're not barred. So you could easily decide the issue, the mailbox rule issue, and not have to decide the statutory or the equitable toll. Well, except that he simply assumed that there was timeliness for one big chunk of time. That's correct, Your Honor. And we'd have to decide that if we decided the mailbox rule, right? Well, you don't have to decide it necessarily, because if you simply decide from the time that a California supreme court denies Mr. Hernandez's last habeas petition, the one and only one that was filed there, and the time it took him to file the federal habeas petition, the time that it was signed and mailed from the prison mail system, the federal habeas petition, it took about 15 days for it to be docketed in the district court. So if you take that time and apply it, then you don't need to necessarily find or necessarily decide the issue that a district court declined to decide, which was the period of the 242 days where he's pursuing his remedies in the court of appeal, in this California court of appeal, rather than the California superior court. The troubling time here, the one that I think requires a little more complex analysis would be when Mr. Hernandez is attempting to or is actually pursuing his state court remedies in the superior court, in the California superior court. Because when he comes, when he's done with that, when he comes into the court of appeal, the California court of appeal, he's acting very diligently. I mean, he's filing things in a month span. As soon as he gets denied, he files it. As soon as he gets denied, he files it. So the issue is the timing between the two petitions in the superior court, correct? Correct. And that was 237 days. 239 days, Your Honor. All right. That's the critical time. But how do you meet the test for that time to be told? Your Honor, it's a two-part test, as Your Honor knows. One is the, whether or not there was an elaboration of the facts of the first petition that was filed. But wasn't it an entirely separate claim, ineffective assistance of counsel for different reasons than were cited in the first petition? No, Your Honor. When you look at the two petitions. Now, keep in mind, Your Honor, this was being done by a pro se petitioner, most likely by a jailhouse lawyer. And what they were looking at is they filed this petition, the first petition in the California superior court, the very first one. The California superior court denies the petition because it's based on insufficient and conclusory facts. So what does Mr. Hernandez do? He elaborates on the facts. And if you notice, if you look at the second petition and compare it to the first one, he's really elaborating. He's going through every single witness testimony. He's going through the closing arguments. And he's making a case as to why the impermissibly suggestive identification that was done in this case should have been litigated in the trial court by counsel. And he does the same thing. One more claim that he's got that's critical is the alibi witnesses. So he's got two important claims. But he never contended in the first petition that his counsel was ineffective for failing to move to suppress the eyewitness identification. He didn't make that claim specifically. So the claim wasn't made to later be elaborated on. Isn't that correct? Well, he does make a very similar claim. He doesn't specifically say that my counsel was ineffective. But he does say that the identification was suspect, that it should have been litigated, it should have been challenged. He doesn't necessarily come up with those words and say, yes, my counsel should have brought a motion to suppress the identification. You're absolutely correct, Your Honor. But, again, we're talking about someone who's not very well educated, who doesn't understand the intricacies of how you present a claim. I mean, the facts were there, though. The facts were there. And he does exactly what the court, what the superior court told him to do, which is to elaborate. He does just that. He files a petition. He elaborates on it. He makes it tighter. He brings clean claims in front of the court. The court says, the California Superior Court says, denied because it's based on the same facts and law as the prior petition. I think that speaks volumes with regard to the first King test. Of course he said that he raised entirely new claims. Of course. We're talking, yeah, he's trying to save. He's trying to do whatever he can to be able to move forward. So what does he do? I'm sure people are telling him, maybe this is the route to go. But keep in mind, Your Honor, as far as the – now, that issue, I think, is a very simple issue. I think if you look at the fair reading of the two petitions, it does reflect the two petitions being maybe not identical, but very similar in nature. The theme underlying the two petitions is Mr. Hernandez saying, look, there was a misident – this was an impermissibly suggestive identification. It's essentially a level of generality problem, right? I mean, the first petition did complain about his lawyer's work with regard to the identification question. It didn't specifically say that the problem was the external – the original out-of-court identification. Right. It didn't say that it was inadequate with regard to identification. He doesn't specifically say that, Your Honor. I mean, he doesn't come out and say an IAC claim, ineffective assistance of counsel based on Sixth Amendment for failure to do that. He said he should have sought the appointment of an expert witness on eyewitness identification. Correct. And a ballistic expert and all that. I mean, he doesn't, but he provides enough facts for the state to be aware of what is going on here. He doesn't tie it to a particular IAC claim specifically as you have suggested, Your Honor. But he does in fact state the facts. Enough so for anybody reading through the petitions to be able to recognize that he's making at least two critical claims. But you have a timeliness issue, too. That's the second part. That's the second part of it. It was almost eight months? It was 239 days, Your Honor. But you have to look to see what's going on during this time. Right? I mean, he's – What's going on during this time? Well, he's filing discovery motions. I don't know of anybody who would do that just for the sake of filing discovery motions. He files two of them. One, he files it at the very beginning saying I don't have my trial transcripts. We have the actual state appellate counsel in a letter stating I haven't sent it to him yet, to the project that appointed the counsel. But the state claims he does have them. They try to match the pages up and say he does have them. Correct. Correct. The state – it may very well be he has some of it. He didn't have the entire transcript. And he's looking to – he's the person who is sitting at the trial, but the person who is preparing his petition doesn't know anything about his case. He needs the record to be able to move forward. California law requires you to have some facts stated in order for you to move forward in the Hague's petition. So I think when you look at the – when you look at the entire time where he's hanging out in the – he's trying to challenge his conviction in the superior court, during that period of time, the timeliness issue, I admit, is a close question. But I don't think, given the facts and circumstances, given that he's filing two discovery motions, one of which was never ruled on, the second one eventually gets ruled on and is denied, we don't know what's going on during that period of time. We don't know whether or not he's got his entire record. We don't know what happens within the prison system. What we do know is that he was being transferred from one prison facility to another. He has to be waiting for jailhouse lawyers so they can prepare his petition, help prepare his petition. So there's a lot of facts that are unknown in this period of time. I think the second critical period of time, the 242 days, that's a very simplified analysis, Your Honor. He's acting diligently throughout that time. He's going from one court to another. Now, the problematic thing is that the California Court of Appeal does deny his signing in Ray Clark. But you've got a California Supreme Court. It takes the California Supreme Court, I believe, about 190 days, to be exact, 190 days to decide the petition. There is no way the California Supreme Court was not looking at the merits of this petition and decided on the merits. It took them that long to decide that they must have been looking at the case. Your time is up. Yes, Your Honor. May I have a rebuttal for a few minutes? We'll look into that. Thank you. Good morning. Supervising Deputy Attorney General Bill Bilderbeck on behalf of the warden. Petitioner's argument that this petition should be considered timely fails for three separate reasons. First, to respond directly to your question, Judge Berzon, even with application of the mailbox rule, this petition would be untimely. We'll get into the question, or I'll get into the question, of whether the mailbox rule is appropriately applied here. It would be untimely only with regard to the, if we took out, if the 237 or 239, because I thought it was 237. I have 237 as well. I'm sorry, what? I have 237 as well. Didn't count, that would be a problem. Right. But if it did count, would the mailbox rule matter? If you toll, if you count the entire 237-day period as tolling, then I think there is no calculation under which this would be untimely. I think that that would be completely untimely. Either way, it doesn't matter, you're saying. I think that's right. I have to confess, I haven't necessarily gamed out every possible permutation of tolling, gap tolling, and the mailbox rule. But I believe that that's correct. However, that 237-day period doesn't, should not be tolled because he was not simply elaborating, as Your Honor suggested, on the claims. Before we get to that. Yes, ma'am. Is that the only period you're contesting? No. There's a number of periods in contention. It certainly is the warden's position that he doesn't get gap tolling any time he returns to the same court again. And that's the King Rule, and the King Rule is perfectly clear that if you go up the chain, if you go from the Superior Court, Court of Appeal, up to the Supreme Court, and in that order, then you get gap tolling. But the period between the Court of Appeals and the Supreme Court, he didn't do that. Correct. So basically we're talking about the period between the first Superior Court petition and the Court of Appeals, or there were two Court of Appeals. Right. And that's exactly my point. There was a gap. He had two filings in the Court of Appeal which were essentially similar. And those two essentially similar filings, you do not get tolling for that gap either. And that accounted for 38 days of the period. Well, this is all just so complicated. How do we expect a person in custody to figure all this out? Oh, I wouldn't expect a person in custody to figure any of this out, Your Honor. No. Why don't we just think about the fact that he worked to pursue his rights, he tried to get a pro bono lawyer, he filed discovery motions, he got jailhouse lawyers to assist him. He wasn't sleeping while he was in the jail cell. He was trying to get help and trying to get this thing going. Well, I would certainly disagree that he was diligently pursuing his remedies during that 237-day period, after the Superior Court denied his first Superior Court petition, and then he returned to the Superior Court the second time. There's really been no satisfactory explanation. They deny all of these routinely. Yes, Your Honor. They get postcard denials. Well, not in the Superior Court, Your Honor. No, they do not. What? The Superior Court, they deny these routinely. Well, he essentially did. I mean, he got one sentence at the beginning saying it was vague, something, something, and the second time he got a postcard denial, right? Well, the second one was essentially saying that we've already – that this – Well, I mean, his major contentions are, with regards to the timing, is that he was trying to get the record. And so there was a dispute between the two of you as to whether he had the record or he didn't have the record. Well, he claimed he didn't have the record at all. Right. No discovery motion was ever granted. Nevertheless, he attached to his very first petition filed in the Superior Court his records, the records that he claims he didn't have. Well, some pieces of it. Well, no, he did not lodge the entire record, but he claimed he did not have his briefs, but he attached the table of contents from his briefs. He claimed he did not have his clerk's transcript. He attached pages from the clerk's transcript. But the main thing he didn't have was the transcript of the trial. And, again, he attached pages from the reporter's transcript. But we know he didn't have the transcript of the trial. The lawyer said he didn't have it. No, that's not accurate, Your Honor. Again, go back to the first habeas petition filed in the Superior Court. You will see that copies of the reporter's transcript were attached. Well, I understand that, but he certainly didn't have all of it. And his lawyer said she hadn't sent it to him. Well, we don't know that he didn't have all of it, Your Honor, because the only person who is suggesting he didn't have all of it. Well, he said he didn't. So what are we supposed to do? Should we have a hearing on it? By no means, Your Honor, because the lack of access to the records is not the dispositive question on timeliness. You're not entitled to your records, and you're not entitled to tolling while your records are being generated. That would be a completely unprecedented expansion of the equitable tolling principles that we're talking about, to say that you have one year from the time the complete record is transmitted to the prisoner. This is not equitable. The timeliness issue in this instance isn't equitable tolling. This is just the two-part test we're talking about, where they have to be an expansion and timely file. But that's different from the concept of equitable tolling, correct? And that's absolutely true, Your Honor. This has to be reasonable, not extraordinary circumstances, correct? And that's absolutely correct, Your Honor. And I'm sorry. I was responding to Judge Berzon's question about whether or not tolling is available while we're awaiting transcripts. Well, I meant statutory tolling. And in this instance, he was actively trying to get the record. Now, whether you think he should be getting the record or not getting the record, as Judge Pregerson said, he wasn't sitting around. He was actively trying to get the record. But that's not the question, Your Honor, for the purposes of tolling. For the purposes of tolling, the only question is, is he pursuing his remedies in court in a timely manner? Well, he was pursuing his remedies in court. Why do they call it equitable? I beg your pardon? Why do they call it equitable? Well, it depends on the circumstances. I mean, I think as Judge Amon was, I'm sorry if I mispronounced your name, ma'am, was just averting, gap tolling isn't necessarily solely a principle of equitable tolling. But in this case, there are several reasons why equitable tolling would not be a satisfactory answer to the claim. The first, and a claim, an issue that's been so far overlooked completely this morning is Petitioner was unambiguous both in State court and in Federal court. He was what? Unambiguous in both State court and Federal court that the first superior court document that we're calling a habeas petition was not a habeas petition. He was clear on that in response to the ---- But your argument was a habeas petition. Everybody's changing positions. I was not. You personally. Well, it was me personally, actually, Your Honor. And I have to be clear that I was clear, I think, to the district court and the district court adopted this position that if you accept his argument that that first petition doesn't count, was not a habeas petition, but was simply an exhibit to his motion for discovery. But you didn't accept his argument. I argued it in the alternative in the district court, and the district court held in the alternative that that was a basis for finding the petition untimely. So there's no inconsistency. My point is he has changed his position radically on a number of things from the time we were in the district court. He has now said, again, unambiguously argued in the district court that his first habeas petition in the superior court shouldn't be considered at all. He unambiguously argued in ---- But clearly the State court did consider it. Absolutely. And that was my basis for considering it. So can we let go of that one and just assume that we're talking about the first petition that the State court considered to be a habeas petition? Yes, Your Honor, but if we're going to be talking about equitable principles and whether or not we're going to extend equity to a petitioner, it is troubling when someone comes into court, comes into State court and comes into Federal court and says something that is so flatly untrue about their pleadings in the lower court, and then comes in and asks for equity. He's not entitled to equity. He's only entitled to the periods of time during which he actually had matters pending in front of the State court. To extend to him any additional time would be unfair. It would be unfair to the State, and it would be ---- it would frankly throw the entire mailbox rule scheme out of whack. What does the mailbox rule have to do with it? You just told me the mailbox rule had nothing to do with it. Why was that unfair to the State? Could you answer my question and then answer Judge Ferguson's question? Go ahead. My question is, I had put the whole mailbox rule out of my head because you told me it didn't matter. He's out of time regardless of application of the mailbox rule. Petitioner argues that, no, that there is sufficient tolling that the mailbox rule becomes significant in the determination of the case. And so I don't want to ---- So you're saying if we count it all the time he wants us to count, then the mailbox rule matters? Yes. What is it, about 40 days or something? Something on that order. That's correct, Your Honor. There are calculations, and this was essentially the calculation that Petitioner proffered to this Court, is that if you accept this expansion of the mailbox rule that he's proposing, then the mailbox rule becomes significant. All right. Judge Ferguson's question. And I beg your pardon, Your Honor, I've forgotten your question. I'll forgive you. Thank you. Well, when it went to the State Court of Appeals, what was the response that he got? From? The State Court of Appeals. He went to the State Court of Appeals on two occasions. Yeah. On the first occasion, they denied his claim without ---- with a citation to In rea ---- no, I'm sorry. I'm confusing. On the first occasion, they denied his petition without comment. On the second ---- Yeah, yeah. They just sent a postcard. On the first occasion, they denied it without further comment, yes. Yeah, yeah. And on the second occasion, they denied it with a citation to In re Clark, which was their indication that this was untimely and successive. Well, wait a minute. Is there any authority for the proposition that an In re Clark citation is an untimeliness as opposed to a successiveness? Well, in California, successiveness and untimeliness ---- I want to know if there's any Federal authority for that proposition. I don't believe so, Your Honor. I believe that's pretty much just a State law question, and this is the way the State is treating it. No, it's not a State law question. It's a question of what Chavez and the Federal cases mean by a untimely petition that was not properly filed and whether untimely means untimely in the sense of not something that should have been thrown out the door by the clerk because it was, you know, too late in that sense, or whether the content of it was repetitive, which is what Clark essentially means by it's delayed in the sense that you're raising something that you should have raised earlier, but that's subject. That's substantive. And I follow Your Honor, I think, completely. I would ---- I think that that question isn't squarely presented in this case. Why not? Because even if you consider that second court of appeal habeas petition to be properly filed, he's still out of time. But you are arguing that, and that Clark is a properly filed problem, and there is no authority for that. Well, that's correct, Your Honor. That's correct. I recently saw a cartoon where two cavemen were arguing the first appeal, and the caveman lawyer had to say, I have no precedent for that, Your Honor. And that's certainly true. It's not deadly. I mean, I understand that there are things without precedent. But I just want to be clear that your characterization of Clark is not one that any Federal court has adopted. To the best of my knowledge, that's correct. Right. But again, it's not a question that we necessarily have to reach in this case because the mailbox rule issues, I think ---- All right. Do you want to talk about the mailbox rule? You're out of time, but I wouldn't mind slightly ---- I must say that I am really surprised by your mailbox rule argument. It doesn't make any sense to me. So maybe you can give me some sense to it. Well, Houston v. Roe, they established a balancing test in setting up the mailbox rule in the first instance. And that balancing test had, as the competing concerns on the one hand, the fact that a prisoner has no choice, if he wants to personally mail something to the court, he has no choice but to abandon that material to a prison official. But this is exactly what he did here. He just asked somebody to carry it down the hall. I mean, it just makes no sense. Well, and ---- What difference does it make if he handed it to them or somebody else handed it to them? And that was one of the issues that Houston was concerned with. The other issue that Houston discussed was the ability of the jail to protect itself against a ---- And how is that affected by this? Didn't they record the document that was actually filed by the person who actually filed it? Well, of course ---- Who signed it, so you could very well find out exactly who he was? Well, they can't look at the legal mail. They can't open the mail and examine its contents for substance to verify what it is. But they couldn't do it if Hernandez had filed it himself either. He could have said he was filing it and he could have filed a baseball card. Well, and in that eventuality, we would have a mail log which would say that legal mail was sent to the Central District of California on a given day. Which you have now. Which you have now with regard to the person who did mail it, right? Well, we don't know how many mailings those people did. There are hundreds of mailings going from prisons to courts, State and Federal courts around the State every day. That's true anyway. But when we know who the person ---- when we can identify the petitioner personally ---- Well, he has to identify him. When he says I gave it to somebody, he has to tell you who he gave it to, which he did, who also signed the document. So when you got the document, you saw he signed it. So what is your problem? I really don't get it. Well, my problem is manifold. One of them is that Houston itself limited it on its facts to the situation where a petitioner hands something to the prison official. This Court has repeatedly said that that was the factual predicate for application of the mailbox rule, is that the petitioner personally hands the material to the prison official. And so this expansion of the mailbox rule to anybody that the petitioner hands it to who then may hand it to a prison official. Well, if there were a delay after that, you could have ---- maybe there would be an issue there, too, but there wasn't one. Well, we don't know that that is the case. What we do know is that there was this proof of service that was attached that was signed by five different prisoners, counting petitioner himself, over the course of this litigation. And so, no, we cannot say with confidence that the mailing by a prisoner other than petitioner was the mailing that was relevant to the particular cause of action. We can't repose confidence in that. And we certainly don't want to set up a system where every prisoner can give everything to Joe Smith to mail, then all of the prison mail, all of the legal mail goes out under Joe Smith's name, and it becomes impossible for the State to track that material because he's mailing everything everywhere. But can't they have a system where they just note who he's making mailings on behalf of? Well, not without examining the contents of the package, which is forbidden because it's labeled legal mail. But essentially you get the contents of the package. I mean, the document is failed in court and you get it. So you know what was in the package. Well, but we don't know when it was mailed, and that's the relevant question. The State has to have the capacity to protect itself against a false accusation that it was handed to a prison official on a particular date. And if you have a prisoner who is processing all of the mail for the prisoners in that prison, we won't be able to assess that with any accuracy at all. And we are essentially back in the situation that Houston decried, which is now we have a person anonymously mailing things. We don't know what was mailed when anymore. And so the State has no capacity to protect itself against a false accusation. You know, when the State sends out one of these postcard denials, we don't know what the basis of the ruling is. So we really have to protect ourselves on this court from this onslaught because the State isn't doing its job. You know that. Well, Harrington v. Richter has given us some guidance about how to interpret these. Well, first of all, here's what happens. You get a prisoner. He files a State habeas petition. Now, he can file it in the Superior Court. He can file it in the Court of Appeals. He can file it in the Supreme Court. Right? And invariably he'll get a postcard denial or he may get a citation to a case that he has no idea what that case is about. So it goes up that way. And then what happens? Then they file in the federal court. Right? And so what does the federal court do when they file? They do all the work that the State court should have done. We have hearings. We have magistrates. We go through all of that. We have a huge number of personnel that just handle all this. And why do we do that? Why do we do that? Because the State doesn't do its job. It's just that simple. And it's very simple here when these folks and why is it that when you're dealing with federal habeas, we rarely see one. Rarely see one. Do you know that? I'm sorry, rarely see one? We rarely get a federal habeas from a federal prisoner. Huh? Because our State court, our district court judges are doing their job. You know why they're doing their job? Because they have, their responsibility is fixed. Once that case is filed in that court, it stays with that judge as long as that judge is on the bench. But in the State court system, it stays with a certain courtroom. Isn't that right? Well, yeah. Yeah, it stays with a courtroom. And then the judges change courtrooms all the time, every year. That's what happens in a lot of places. I spend time on the Superior Court so I have some idea what's going on, you know. So then the burden falls on the federal system. And it's so much easier, it would be so much easier for the State when these matters come up, just to have them heard and get them out of the way. You know, we have more magistrate judges now than we have district judges. And all of them have a big staff. But that's good because it's full employment for federal employees. So we should thank you for that. You know, I'm being facetious. But I don't see the, so you let them file it and you have a hearing. It doesn't take that long. Think of all the hours we've spent and all the research we do and all the briefs we read when the State could handle it itself. Well, certainly the State is not going to start waiving its rights under the federal system. No, no, no one asks the State to waive its rights. Well, it's our position in this case that if we assert our rights, this petition is untimely. Nobody wants the State. I'm just talking to you about reform. It will happen 100 years from now. Well, unless the Court has further questions, I'd be prepared to submit. Yeah, you do a good job for the State. I appreciate your sanctions. You're a good lawyer. Thank you. Now, we don't need any more, I don't think. Do you want some more? Thank you very much. Thank you.
judges: Amon, Pregerson, Berzon